1   Kristin A. Zilberstein, Esq. (SBN: 200041)
    Jennifer R. Bergh, Esq. (SBN 305219)
2   LAW OFFICES OF MICHELLE GHIDOTTI
3   1920 Old Tustin Ave.
    Santa Ana, CA 92705
4   Ph: (949) 427-2010 ext. 1010
    Fax: (949) 427-2732
5   kzilberstein@ghidottilaw.com

6
    Attorney for Secured Creditor
7   Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust as Owner Trustee of the
    Residential Credit opportunities Trust III, its successors and/or assignees
8

9                  UNITED STATES BANKRUPTCY COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                      RIVERSIDE DIVISION

12

13

14  In Re:                        )   CASE NO.: 6:18-bk-15168-WJ
                                   )
15  JEU VICTOR SORIA, SR.          )   CHAPTER 13
    ELISA GALLARDO                 )
16                                 )
                                   )   **OBJECTION TO AMENDED**
17                                 )   **CHAPTER 13 PLAN**
            Debtors.               )
18                                 )   Date: 8/15/2018
                                   )   Time: 2:00 PM
19                                 )   Courtroom: 302
                                   )   Location: 3420 Twelfth Street,
20                                 )   Riverside, CA
                                   )
21                                 )
                                   )   Judge: Wayne E. Johnson
22                                 )
                                   )
23                                 )
                                   )
24                                 )
                                   )
25                                 )
                                   )
26                                 )
                                   )
27                                 )

28  ─────────────────────────────

TO ALL PARTIES IN INTEREST AND TO THEIR ATTORNEYS OF RECORD:

Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust as Owner Trustee of the Residential Credit opportunities Trust III, its successors and/or assignees, ("Secured Creditor") in the above-entitled Bankruptcy proceeding, hereby submits the following Objections to Confirmation of the Chapter 13 Plan proposed by ("Debtors") Jeu Victor Soria, Sr., and Elisa Gallardo.

Secured Creditor is entitled to receive payments pursuant to a Promissory Note which matures on 7/1/2037 and is secured by a Deed of Trust on the subject property commonly known as 968 Ashford Cir., Corona, CA 92881. As of 6/19/2018, the amount in default was $21,101.25, as described in the Proof of Claim filed 7/10/2018. Attached hereto is a true and correct copy of the Proof of Claim as **Exhibit "1"**.

### **ARGUMENT**

Under 11 U.S.C. §1325, the provisions for plan confirmation in a Chapter 13 have been set. Unless otherwise ordered, under 11 U.S.C. § 1326(a)(1), the Debtors shall commence making the payments proposed by the Plan within 30 days after the Petition is filed. The Plan must comply with all applicable provisions of 11 U.S.C. § 1325 to be confirmed. Based on the foregoing, as more fully detailed below, the Plan cannot be confirmed as proposed.

### A. **IMPERMISSIBLY MODIFIES SECURED CREDITOR'S RIGHTS**

Under 11 U.S.C. §1322(b)(2), a Plan that modifies the rights of a creditor whose claim is secured only by a security interest in real property that is Debtors' principal residence is impermissible. The proposed Plan does not set forth a reasonable schedule and time period for the payment of the arrearages owed to Secured Creditor. The payoff period and monthly repayment amount proposed by the Debtors exceed a reasonable arrangement in light of Debtors' past non-payment history. Debtors allege in the Amended Plan that the arrears owed to Secured Creditor are in the amount of $18,213.00 while in fact the actual arrears owed are in the amount of $21,101.25. To cure the pre-petition arrearages of $21,101.25 over the term of the Plan within 60 months, Secured Creditor must receive a minimum payment of $351.69 per

month from the Debtors through the Plan. Debtors' Plan provides for payments to the Trustee in the amount of $863.00 for months 1 and 2 and $2,252.00 per month for the remaining months. Debtors have not provided sufficient funds to cure the arrears over the term of the Plan within 60 months. Therefore, the Plan is not feasible.

**B.  THE PLAN IS NOT FEASIBLE – DEBTORS DOES NOT HAVE SUFFICIENT INCOME**

Pursuant to Schedules I and J, Debtors has net income of $2,919.00.  Based on the petition, Debtors do not have sufficient net income for the proposed plan muchless to increase the plan payments to cure the arrears owed to Secured Creditor.  In addition, Schedule J only has $250 allocated for food per month for two people in the household.  While it is admirable that Debtors want to make such a tremendous effort to make their Chapter 13 Plan feasible, this amount for food is not sufficient.  It amounts to $8 per day.  Realistically, Debtors should be increasing their budget.  However, they do not have the funds to do so or to fund the plan, or to increase the monthly plan payments to cure the arrears owed to Secured Creditor.  Thus, Debtors does not have sufficient net income for a Chapter 13 Plan, and the case should be dismissed under these circumstances.

////

////

////

////

////

////

////

////

////

////

6:18-bk-15168-WJ
Objection to Plan

1

## CONCLUSION

2        Any Chapter 13 Plan proposed by the Debtors must provide for and eliminate the

3 Objections specified above in order to be reasonable and to comply with applicable provisions

4 of the Bankruptcy Code.  Secured Creditor respectfully requests that confirmation of the Chapter

5 13 Plan as proposed by the Debtors be denied.

6        WHEREFORE, Secured Creditor prays as follows:

7      1.     That confirmation of the Proposed Chapter 13 Plan be denied,

8      2.     For attorneys' fees and costs herein, and

9      3.     For such other relief as this Court deems proper.

10

11 Dated: August 1, 2018           LAW OFFICES OF MICHELLE GHIDOTTI

12

13                     /s/ Kristin A. Zilberstein

14                     Kristin A. Zilberstein, Esq.

Counsel for Wilmington Savings Fund Society,

15                     FSB, D/B/A Christiana Trust as Owner Trustee of
the Residential Credit opportunities Trust III, its

16                     successors and/or assignees

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

**Fill in this information to identify the case:**

Debtor 1    Elisa Gallardo

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number   18-15168

Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

Wilmington Savings Fund Society, FSB, D/B/A Christina Trust as Owner Trustee of the Residential Credit opportunities Trust III
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| AMIP Management | FCI Lender Services |
| Name | Name |
| 3020 Old Ranch Parkway, Suite 180 | P.O BOX 27370 |
| Number    Street | Number    Street |
| Seal Beach    CA    90740 | Anaheim Hills    CA    92809 |
| City   State   ZIP Code | City   State   ZIP Code |
| Contact phone _____ | Contact phone _____ |
| Contact email _____ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

---

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __9__ __7__ __2__ __8__

**7. How much is the claim?**   $_____400,041.10  **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** Recorded Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $____400,041.10

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $_____21,101.25

**Annual Interest Rate** (when case was filed) __2.00__ %

☐ Fixed

☑ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   07/10/2018
                   MM / DD / YYYY

/s/ Kristin A. Zilberstein
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Kristin A. Zilberstein | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Authorized Agent | | |
| Company | The Law Offices of Michelle Ghidotti | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1920 Old Tustin Ave. | | |
| | Number          Street | | |
| | Santa Ana | CA | 92705 |
| | City | State | ZIP Code |
| Contact phone | 949-427-2010 | Email | Kzilberstein@ghidottilaw.com |

## Mortgage Proof of Claim Attachment

(12/15)

If you claim a secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearages as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 18-15168 | Principal balance: | $325,792.04 | Principal & interest due: | $16,669.37 | Principal & interest: | $1,252.98 |
| Debtor 1: | ELISA M GALLARDO | Interest due: | $10,533.94 | Prepetition fees due: | $6,789.18 | Monthly escrow: | |
| Debtor 2: | | Fees, costs due: | $6,789.18 | Escrow deficiency for funds advanced: | $0.00 | Private mortgage insurance: | |
| Last 4 digits to Identify: | 9728 | Escrow deficiency for funds advanced: | | Projected escrow shortage: | $0.00 | Total monthly payment: | $1,252.98 |
| Creditor: | Wilmington | Deferred Principal: | $56,925.94 | Less funds on hand: | -$2,357.30 | | |
| Servicer: | FCI Lender Services | Total Debt: | $400,041.10 | Total prepetition arrearage: | $21,101.25 | | |
| Fixed accrual/daily simple interest/other: | Adjustable Rate | | | | | | |

### Part 5: Loan Payment History from First Date of Default

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, int & Esc past due balance | H. Amount to principal | I. Amount to Interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees/ Charges balance | Q. Unapplied funds balance |
| 5/1/17 | $1,078.51 | | | mortgage payment | 5/1/17 | $1,078.51 | | | | | | $325,792.04 | | | | |
| 6/1/17 | $1,078.51 | | | mortgage payment | 5/1/17 | $2,157.02 | | | | | | $325,792.04 | | | | |
| 7/1/17 | $1,078.51 | | | mortgage payment | 5/1/17 | $3,235.53 | | | | | | $325,792.04 | | | | |
| 8/1/17 | $1,078.51 | | | mortgage payment | 5/1/17 | $4,314.04 | | | | | | $325,792.04 | | | | |
| 9/1/17 | $1,078.51 | | | mortgage payment | 5/1/17 | $5,392.55 | | | | | | $325,792.04 | | | | |
| 10/1/17 | $1,252.98 | | | mortgage payment | 5/1/17 | $6,645.53 | | | | | | $325,792.04 | | | | |
| 11/1/17 | $1,252.98 | | | mortgage payment | 5/1/17 | $7,898.51 | | | | | | $325,792.04 | | | | |
| 12/1/17 | $1,252.98 | | | mortgage payment | 5/1/17 | $9,151.49 | | | | | | $325,792.04 | | | | |
| 1/1/18 | $1,252.98 | | | mortgage payment | 5/1/17 | $10,404.47 | | | | | | $325,792.04 | | | | |
| 2/1/18 | $1,252.98 | | | mortgage payment | 5/1/17 | $11,657.45 | | | | | | $325,792.04 | | | | |
| 3/1/18 | $1,252.98 | | | mortgage payment | 5/1/17 | $12,910.43 | | | | | | $325,792.04 | | | | |
| 4/1/18 | $1,252.98 | | | mortgage payment | 5/1/17 | $14,163.41 | | | | | | $325,792.04 | | | | |
| 5/1/18 | $1,252.98 | | | mortgage payment | 5/1/17 | $15,416.39 | | | | | | $325,792.04 | | | | |
| 6/1/18 | $1,252.98 | | | mortgage payment | 5/1/17 | $16,669.37 | | | | | | $325,792.04 | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

## BALLOON ADDENDUM TO NOTE
### (Fixed Rate)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

This is a Balloon Rider to my Note of even date herewith payable to the order of
__JPMorgan Chase Bank, N.A._____("Lender") in the principal amount of $   __50,000.00____

**I further promise and agree with the Note Holder as follows:**

The text of the first paragraph of Section 4 is deleted and replaced by the following:

I will make monthly payments of $   __366.19____ , beginning on   _____July 19, 2007_____ .
I will make these payments on the same day of each consecutive month.
If, on   ____June 19, 2022_____ ,  I still owe amounts under this Note, I will pay all those amounts, in full, on that date, which is called the "Maturity Date", I understand that my regular monthly payments in the amount set forth above will not be sufficient to fully repay the principal before the Maturity Date and that this loan provides for a scheduled Balloon Payment of $ __38,727.14__  on the Maturity Date.

Unless otherwise required by applicable law, the Note Holder may apply my payments to principal, interest and other charges in any order.

The text of Section 9 (B) is deleted and replaced by the following:

### 9(B)   Default

This Note will be in default if I (1)  do not pay the full amount of each monthly payment on the date it is due, (2)  fail to pay the scheduled Balloon Payment on the Maturity Date, (3) fail to keep all other promises in this Note, in the Security Instrument or in any other obligation I owe to the Note Holder, (4)  have failed or failed to be truthful or failed to include material information in the application process for this loan, (5)  am the last remaining obligor on this Note and I die.  If this Note is in default, the Note Holder may exercise all of its rights under this Note, the Security Instrument and applicable law, including the right to demand payment in full (subject only to any applicable notice and waiting period as required by applicable law) and the right to sell my property that is subject to the Security Instrument to pay this debt.

This Addendum is part of the Note. By signing and sealing this Rider, the undersigned hereby agrees under seal to the terms set forth herein and acknowledges receipt of a completed copy of this Addendum.

Date:  6/18-07-

_Elisa M. Gallardo_____ (Seal)         _____ (Seal)
Borrower  ELISA M GALLARDO                  Borrower

CERTIFIED TO BE A TRUE AND
EXACT COPY OF THE ORIGINAL HEREOF.
FIDELITY NATIONAL TITLE COMPANY
BY

_____ (Seal)         _____ (Seal)
Borrower                                    Borrower

BALNT (Rev. 04/20/04)

# CLOSED-END NOTE
# (FIXED RATE)

JPMorgan Chase Bank, N.A.              Date:   **June 18, 2007**
C/O Chase Home Finance LLC          Account No
250 West Huron Road                       Ref. No.:
Cleveland OH, 44113-1406

**968 ASHFORD CIRCLE, CORONA, CA 92881-7436**

## 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   **50,000.00**
(this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
**JPMorgan Chase Bank, N.A.**        . The Lender or anyone who takes this Note
by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### Truth in Lending Disclosure Statement

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as |
|---|---|---|---|
| 8.097 % | $ 54,750.15 | $ 49,525.00 | $ 104,275.15 |

**Variable Rate:** This transaction does not contain a Variable Rate feature.

**Payment Schedule:**

| No. of Payments | Amount of Payments | When Payments are Due - Monthly Beginning on |
|---|---|---|
| 179 | 366.19 | July 19, 2007 |
| 1 | 38,727.14 | June 19, 2022 |

**Late Charge:** If a payment is more than **10** days late, I will pay a late charge in an amount equal to **5.00** % of the total regularly scheduled payment.

**Security:** This loan is secured by my property located at:
**968 ASHFORD CIRCLE, CORONA, CA 92881-7436**

**Property Insurance:** You may obtain hazard and flood insurance from any company I choose that is acceptable to the lender.

**Prepayment:** If I pay off early, I will not have to pay a penalty. I will not be entitled to a refund of part of the finance charges if I prepay.

**Assumption:** Someone buying my home will not be allowed to assume the remainder of the mortgage and note at the original terms.

**See contract documents and the remainder of this document, for any additional information about non-payment, default, the right to require repayment in full before the scheduled date, and prepayment refunds and penalties.**

## 2.    INTEREST

Interest will be charged on the unpaid principal until the full amount of principal has been paid. Interest will be computed and charged from one scheduled payment due date to the next, without regard to the date on which I actually make my payments and on the basis that the period between each scheduled payment consists of 30 days. Consequently I understand that I will not pay less interest if I make my monthly payments early and that I will not pay more interest if I make my monthly payments late. I recognize, however, that if I make any monthly payment late I may owe a late charge under the provisions of Section 9(A).

I will pay interest at a yearly rate of 7.980%. For the purposes of calculating charges under this section, a year shall consist of 12 months each containing 30 days.

The interest rate required by this section is the rate I will pay both before and after any default described in Section 9(B) of this Note.

3.    **CLOSING COSTS**

I may be asked to pay prepaid finance charges and certain other closing costs, as allowed by applicable law, in regard to this loan. I agree to pay all such charges set forth on the Settlement Statement for this transaction. I will be given a copy of the Settlement Statement.

4.    **PAYMENTS**

I will make  N/A  monthly payments of $  N/A  beginning on:
July 19, 2007  . I will make these payments on the same day of each consecutive month. Unless otherwise required by applicable law, the Note Holder may apply my payments to principal, interest and other charges in any order.

I will make my monthly payments at:

   **Chase Home Finance LLC**
   **P.O. Box 9001871**
   **Louisville, KY 40290-1871**

or at a different place if required by the Note Holder. The Note Holder may accept late payments, partial payments or items marked "paid in full" or the like without losing any of its rights under this Note.

5.    **BORROWER'S PAYMENTS BEFORE THEY ARE DUE**

(A)   I have the right to make payments of principal at any time subject to any applicable provisions of Section 5(B) of this Note. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. A partial prepayment will not reduce the amount of my regular monthly payments and I must continue to make a full payment each month until I have paid all amounts due.

(B)   If I prepay this Note in full (a "full prepayment") within  N/A  months of the date I sign this Note, I will pay the Note Holder a prepayment charge equal to   N/A   % of the original principal borrowed as disclosed in Section 1 above. I agree this prepayment charge will be in addition to interest and other charges due under the terms of this Note, the Security Instrument and as allowed by law.

6.    **CREDIT INSURANCE**

I may be offered the ability to purchase credit insurance covering my death, disability or unemployment. If credit insurance is offered, it is voluntary and not required. I will not be provided credit insurance coverage unless I sign or initial a separate request for credit insurance. Premiums for any credit insurance I decide to purchase are included in the principal amount of this Note.

7.    **SECURITY INSTRUMENT**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or other security instrument ("Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument provides for other charges which may become part of the debt of this Note and describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.

8.    **LOAN CHARGES**

I agree that the Note Holder intends only to charge interest, fees and charges permitted by law. If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 9.    BORROWER'S FAILURE TO PAY AS REQUIRED/ OTHER CHARGES

### (A)    Late Fees

If I do not pay the full amount of each monthly payment within **10** days after the date on which it is due, I promise to pay a late fee in an amount equal to **5.00** % of the regularly scheduled monthly payment. I will pay this late fee promptly, but only once on each late payment.

### (B)    Default

This Note will be in default if I (1) do not pay the full amount of each monthly payment on the date it is due, (2) fail to keep all other promises in this Note, in the Security Instrument or in any other obligation I owe to the Note Holder, (3) have failed to be truthful or failed to include material information in the application process for this loan, (4) become subject to a bankruptcy or an insolvency proceeding, or (5) am the last remaining obligor on this Note and I die. If this Note is in default, the Note Holder may exercise all of its rights under this Note, the Security Instrument and applicable law, including the right to demand payment in full (following any applicable notice and waiting period as required by applicable law) and the right to sell my property that is subject to the Security Instrument to pay this debt.

### (C)    No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (D)    Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. If the Note Holder refers this Note to an attorney for collection or foreclosure of the Security Instrument, I agree to pay reasonable attorneys' fees as permitted by applicable law, but not to exceed twenty percent (20%) of the unpaid amount of principal and interest, incurred by the Note Holder, including any attorneys' fees relating to any insolvency, liquidation, receivership or bankruptcy proceedings.

### (E)    Credit Insurance Refund To Go To Principal

If I default, the Note Holder may cancel any credit insurance I have purchased in connection with this Note. I hereby authorize any insurer to return to the Note Holder any unearned credit insurance charges, and I agree that the Note Holder may apply any such sums the Note Holder receives to principal due under the Note. No such application of sums shall have the effect of curing my default.

### (F)    Returned Check Fees

If I make a payment with a check that is dishonored for any reason on presentment, I agree to pay a returned check fee of $20, provided such a charge is not prohibited by law.

## 10.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder at least 20 days notice of my new address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 4 above or at a different address if I am given at least 20 days notice of that new address.

## 11.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a cosigner, guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a cosigner, guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

CALNNT                          Page 3 of 5

## 12. WAIVERS

(A)     I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid. We each also waive impairment of collateral and recourse. "Impairment of collateral and recourse" means some act or omission by the Note Holder which reduces the value of the collateral securing this Note or which reduces the right of an obligor to contribution or indemnity from another person. From time to time the Note Holder may agree to extend the time for payment or to modify the amortization of the sum due hereunder.

(B)     The Note Holder may waive or delay enforcing its rights under this Note without losing them or relieving me of any of my obligations. The Note Holder may waive or delay enforcing a right as to one of us without waiving it as to the others. The Note Holder may release any security or any one of us from responsibility under the Note without releasing the others. The Note Holder need not give anyone notice of its waiver, delay or release. The Note Holder may sue any one of us without suing the others. Waiver by the Note Holder of any term, covenant, promise or provision in this Note shall not constitute a waiver of any other term, covenant, promise or provision, or of the same term, covenant, promise or provision at any other time.

## 13. APPLICABLE LAW

This Note is governed by federal law and the laws of Ohio.

## 14. TAX CONSEQUENCES.

You acknowledge that we have given you no assurances that the interest paid on this Note is tax deductible. You are urged to consult your own tax advisor concerning the deductibility of interest and other costs charged in connection with this Note. The Internal Revenue Service requires you to furnish to us, the interest recipient, your tax payor identification number ("TIN") in order to verify any deduction for mortgage interest. Your failure to provide us with your TIN may subject you to a $50 penalty imposed by the Internal Revenue Service.

## 15. DEED OF TRUST CONTAINS DUE ON SALE PROVISION

In addition to the protections given to the Note Holder under this Note, a Deed of Trust dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

15.     **Transfer of the Property.**  If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Deed of Trust.

CERTIFIED TO BE A TRUE AND EXACT COPY OF THE ORIGINAL HEREOF
BY FIDELITY NATIONAL TITLE COMPANY

By signing and sealing this Note, the undersigned hereby agrees under seal to the terms set forth herein and acknowledges receipt of a completed copy of this Note.

_Elisa M Gallardo_ _____ (Seal)     _____ (Seal)
Name:                                          Name:

**ELISA M GALLARDO**


_____ (Seal)     _____ (Seal)
Name:                                       Name:

CERTIFIED TO BE A TRUE AND
EXACT COPY OF THE ORIGINAL HEREOF.
FIDELITY NATIONAL TITLE COMPANY
BY

# InterestFirst™ADJUSTABLE RATE NOTE
### (One-Year LIBOR Index (As Published In *The Wall Street Journal*)
### Rate Caps - 10 Year Interest Only Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

June 18, 2007                          Corona                                    CA
    [Date]                                   [City]                                        [State]
968 Ashford Cir
Corona, CA 92881

                          [Property Address]

## 1.   BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 400,000.00                          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
JPMorgan Chase Bank, N.A.
a bank which is organized and existing under the laws of the United States of America
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  6.250                     %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.   PAYMENTS
### (A) Time and Place of Payments
I will make a payment on the first day of every month, beginning on August 1st, 2007                          . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on  July 1, 2037                     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at JPMorgan Chase Bank, N.A.,  c/o Chase Home Finance, LLC
3415 Vision Drive, Columbus, OH 43219
or at a different place if required by the Note Holder.

MULTISTATE InterestFirst ADJUSTABLE RATE NOTE - ONE-YEAR LIBOR INDEX - 10 Yr. Interest Only Period - Single Family - Fannie Mae Uniform Instrument

**-197N** (0508).01                          **Form 3535 6/05**
VMP Mortgage Solutions, Inc. (800)521-7291
Page 1 of 5                          Initials:



**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **2,083.34**                     until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of July, 2012                     , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and one-quarter          percentage points ( 2.250          %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.250          % or less than 2.250          %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.250          %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  Fifteen        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000            % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

1769172144

VMP®-197N (0506).01                            Page 3 of 5                            Form 3535 6/05
                                                                                     Initials: _____

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

VMP®-197N (0506).01                                    Page 4 of 5

Form 3535 6/05
Initials: _____

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| _____ (Seal) | *Elisa M. Gallardo* _____ (Seal) |
| -Borrower | Elisa M. Gallardo                   -Borrower |

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

*[Sign Original Only]*



CERTIFIED THAT THIS IS A
TRUE AND CORRECT COPY OF
THE ORIGINAL.

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Orange_ } ss.

On _June 18, 2007_, before me, _Elsa Gallardo – Notary Public_
Date                                   Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally    appeared    _Elisa M. Gallardo_,
                              Name(s) of Signer(s)

---

**ELSA GALLARDO**
COMM. # 1647611
NOTARY PUBLIC•CALIFORNIA
ORANGE COUNTY
My Commission Expires
February 26, 2010

Place Notary Seal Above

☐ personally known to me

☑ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

_Elsa Gallardo_
Signature of Notary Public

——————————— **OPTIONAL** ———————————

*Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Individual | ☐ Individual |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907    Reorder: Call Toll-Free 1-800-876-6827

LENDER: JPMorgan Chase Bank, N.A.
LOAN #: 1769172144
PROPERTY ADDRESS: 968 Ashford Cir, Corona, CA 92881

## SIGNATURE CERTIFICATION/AFFIDAVIT

I HEREBY CERTIFY THAT I, _Elisa M. Gallardo_, DO SIGN MY NAME AS FOLLOWS. THIS IS MY TRUE AND ACCURATE SIGNATURE:

_Elisa M. Gallardo_
BORROWER

State of California                    County of ___Orange___

On _June 18, 2007_ before me, _Elsa Gallardo — Notary Public_,
personally appeared _Elisa M. Gallardo_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Elsa Gallardo_ (Seal)

> ELSA GALLARDO
> COMM. # 1647611
> NOTARY PUBLIC•CALIFORNIA
> ORANGE COUNTY
> My Commission Expires
> February 28, 2010

THIS IS TO CERTIFY THAT I HAVE REVIEWED THE SIGNATURE ON THE ABOVE CAPTIONED BORROWER AND HE/SHE HAS CONSISTENTLY SIGNED HIS/HER NAME ON ALL DOCUMENTS WITHIN OUR FILE AS HE/SHE DID ON THE NOTE.

_____          _Manager_
Lender Representative                Title

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## NAME AFFIDAVIT
Complete if AKA (also known as) is required.

THIS IS TO CERTIFY THAT:

_Elisa M. Gallardo_,

& _Elisa M. Gallardo_ ARE ONE AND THE SAME PERSON. THIS NAME AFFIDAVIT IS COMPLETED IN CONNECTION WITH DOCUMENTS TO OBTAIN A FIRST MORTGAGE LOAN ON THE SUBJECT PROPERTY.

Please sign each way name appears.

_Elisa M. Gallardo_
BORROWER:

_____
BORROWER:

_____
BORROWER:

State of California                    County of ___Orange___

On _June 18, 2007_ before me, _Elsa Gallardo — Notary Public_,
personally appeared _Elisa M. Gallardo_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Elsa Gallardo_ (Seal)

> ELSA GALLARDO
> COMM. # 1647611
> NOTARY PUBLIC•CALIFORNIA
> ORANGE COUNTY
> My Commission Expires
> February 28, 2010

SIGNATURE/NAME AFFIDAVIT for California
C- 7039CA (2/06)

LOAN NO. ████████

# JPMORGAN CHASE BANK, N.A.
## NAME AFFIDAVIT

THIS IS TO CERTIFY THAT   Elisa M. Gallardo

IS ALSO KNOWN AS   **Elisa M. Ortega, Elisa M. Gallardo**

X _Elisa M. Gallardo_   PLEASE SIGN NAME AS APPEARS ON DOCUMENTS

STATE OF _California_

COUNTY OF _Orange_

ON _June 18, 2007_ BEFORE ME, THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID STATE,

PERSONALLY APPEARED _Elisa M. Gallardo_

KNOWN TO ME TO BE THE PERSON WHOSE NAME IS SUBSCRIBED TO THE WITHIN INSTRUMENT AND

ACKNOWLEDGED THAT _Elisa M. Gallardo_

EXECUTED THE SAME.

WITNESS MY HAND AND OFFICIAL SEAL.

NAME (TYPED OR PRINTED) _Elsa Gallardo._

DATE COMMISSION EXPIRES _February 26, 2010_

_per attached_




| reqID: | 2794234 | **Trailing Document Header** | **Date** | 1/13/2017 |



## CL-ASSIGN-UNREC-SOLD

Loan Number: ███████     Borrower Name     GALLARDO, ELISA

Borrower Address  968  ASHFORD CIR CORONA, CA 92881

Document SAK Number

Cus_Doc_type

**Return To:**     **LEONARDO NUNEZ**

**Doc Description**     **Return to Requestor**



**44796-0002794234-001087745**

| **Image Tracking Batch:** | 44796 | **ITEM:** | 53 |
| **Doc Count** | 117 | *DEAL_ID:* | J-25395-12 |

**Comment**    300372

Exception SAK Number

Vault Location

## Customer Special UDFs
**Issuer #** _____ **Pool #** _____

**Account #** _____ **Collateral Control #** _____

**001087745**



**RECORDING REQUESTED BY:**
RICHMOND MONROE GROUP, INC.

**WHEN RECORDED MAIL TO:**
JENNIFER BAINTER
RICHMOND MONROE GROUP, INC.
P.O. BOX 458
Kimberling City, MO, 65686



## CORPORATE ASSIGNMENT OF DEED OF TRUST

Loan # ▓▓▓▓ TS Ref #: 0005170000000233
CA/RIVERSIDE

Assignment Prepared on: December 28, 2016

For Value Received, **BAYVIEW LOAN SERVICING, LLC**, whose address is 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL, 33146 (**herein "Assignor"**) hereby grant, sell, assign, transfer and convey to **BAYVIEW DISPOSITIONS IIIB, LLC**, whose address is 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL, 33146 (**herein "Assignee"**) all interest under that certain Deed of Trust Dated: 6/18/2007, in the amount of $400,000.00, executed by ELISA M. GALLARDO, A SINGLE WOMAN to JPMORGAN CHASE BANK, N.A. and Recorded: 6/27/2007, Instrument #: 2007-0417963 in RIVERSIDE County, State of California and all rights accrued or to accrue under said Deed of Trust.

BAYVIEW LOAN SERVICING, LLC

On: _1-13-17_

Signature: _____
Name:    LEONARDO NUNEZ
Title:    ASSISTANT VICE PRESIDENT

STATE OF __Florida__
COUNTY OF __Miami-Dade__

On _1-13-17_, before me, ____Pamela Vargas____, a Notary Public in and for __Miami Dade__ in the State of ____FL____, personally appeared LEONARDO NUNEZ, ASSISTANT VICE PRESIDENT, BAYVIEW LOAN SERVICING, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

____Pamela Vargas____

Notary Expires: _____ / #: _____

> PAMELA VARGAS
> MY COMMISSION # FF 068874
> EXPIRES: November 6, 2017
> Bonded Thru Notary Public Underwriters

**CA/RIVERSIDE**

Florida.
Miami-Dade

PAULA VARGAS
MY COMMISSION # FF 040874
EXPIRES November 6, 2017
FloridaNotaryService.com

Recording Requested By:

Return To:
JPMorgan Chase Custody Services
P.O. Box 8000
Monroe, LA 71211

DOC # 2007-0417963
06/27/2007 08:00A Fee:69.00
Page 1 of 21
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

Prepared By:



| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|----|----|------|-----|------|
|   |   |   | 21 |      |    |      |      |     |      |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
|   |   |   |      |      | T:   | CTY  | UNI | | 006 |

[Space Abov

# DEED OF TRUST

69

T
006

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  June 18, 2007                              ,
together with all Riders to this document.
**(B) "Borrower"** is
Elisa M. Gallardo, a single woman

Borrower's address is  804 Kemp Ct
Calexico, CA  92231                                . Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
JPMorgan Chase Bank, N.A.
Lender is a  national banking association
organized and existing under the laws of the United States of America                        .

1769172144

**CALIFORNIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                       Form 3005  1/01

VMP ®  -6(CA) (0207)

Page 1 of 15                    Initials: _EMB._

VMP MORTGAGE FORMS - (800)521-7291



Lender's address is
1111 Polaris Parkway, Columbus, OH 43240
Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is Fidelity National Title

**(E) "Note"** means the promissory note signed by Borrower and dated June 18, 2007
The Note states that Borrower owes Lender
Four hundred thousand and 00/100                                              Dollars
(U.S. $    400,000.00                ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than July 1, 2037
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard



-6(CA) (0207)                          Page 2 of 15                    Initials: _____                    **Form 3005  1/01**

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY**                                     of **RIVERSIDE**                                  :

[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

**See attached Schedule A**

Parcel ID Number: ■■■■■■■                                           which currently has the address of
968 Ashford Cir                                                                                   [Street]
Corona                                                              [City], California  92881          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

 -6(CA) (0207)

Page 4 of 15

Initials: 

Form 3005  1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly  payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the





lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

1769172144



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**



(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



-6(CA) (0207)

Page 9 of 15

Initials: 

Form 3005   1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



-6(CA) (0207)

Page 11 of 15

Initials: 

Form 3005   1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

 -6(CA) (0207)
®

Page 12 of 15

Initials: _____

Form 3005   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.





-6(CA) (0207)   Page 13 of 15   Initials:   Form 3005   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            **Elisa M. Gallardo**           -Borrower


                                            _____ (Seal)
                                                                           -Borrower


_____ (Seal)        _____ (Seal)
                         -Borrower                                         -Borrower


_____ (Seal)        _____ (Seal)
                         -Borrower                                         -Borrower


_____ (Seal)        _____ (Seal)
                         -Borrower                                         -Borrower

State of California
County of

} ss.

On June 18 - 2007 before me, Elsa Gallardo - Notary Public .

personally appeared

Elisa M. Gallardo

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



ELSA GALLARDO
COMM. # 1647611
NOTARY PUBLIC · CALIFORNIA
ORANGE COUNTY
My Commission Expires
February 28, 2010

 (Seal)

-6(CA) (0207)

Page 15 of 15

Initials: E.G.

Form 3005  1/01

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Orange_ } ss.

On _June 18, 2007_, before me, _Elsa Gallardo – Notary Public_
Date                          Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Elisa M. Gallardo_
Name(s) of Signer(s)

**ELSA GALLARDO**
COMM. # 1647811
NOTARY PUBLIC·CALIFORNIA
ORANGE COUNTY
My Commission Expires
February 28, 2010

**ELSA GALLARDO**
COMM. # 1647811
NOTARY PUBLIC·CALIFORNIA
ORANGE COUNTY
My Commission Expires
February 28, 2010

Place Notary Seal Above

☐ personally known to me

☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_(signature)_
Signature of Notary Public

──────── **OPTIONAL** ────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _Deed of Trust_

Document Date: _June 18, 2007_ _____ Number of Pages: _15_

Signer(s) Other Than Named Above: _Elsa Gallardo_

## Capacity(ies) Claimed by Signer(s)

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Individual | ☐ Individual |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| | |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

## LEGAL DESCRIPTION

## EXHIBIT "ONE"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF CORONA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Lot 50 of Tract No. 19690-2, as shown on a map recorded in Book 162, Pages 78 to 82, inclusive, of Maps, in the Office of the County Recorder of Riverside County.

Excepting therefrom all oil, mineral, gas, petroleum and other hydrocarbon substances below a depth of 500 feet, as set out in deeds to DSL Service Company, a California Corporation, recorded April 27, 1984 as Instrument Numbers 88230, 88231 and 88232 and May 17, 1984 as Instrument Number 104195 and May 31, 1984 as Instrument Number 115949, all of Official Records.

Assessor's Parcel No: 107-272-009

# FIXED/ADJUSTABLE RATE RIDER

### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)- Rate Caps
### - Ten - Year Interest Only Period)

THIS FIXED/ADJUSTABLE RATE RIDER is made this **18th** day of **June,**
**2007**                , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the
"Note") to
**JPMorgan Chase Bank, N.A.**
("Lender") of the same date and covering the property described in the Security Instrument
and located at:  **968 Ashford Cir**
**Corona, CA  92881**

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of  **6.250**            %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first day of  **July, 2012**            , and the adjustable interest rate I will pay may change
on that day every 12th month thereafter. The date on which my initial fixed interest rate
changes to an adjustable interest rate, and each date on which my adjustable interest rate
could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an
Index. The "Index" is the average of interbank offered rates for one-year U.S.

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Ten-Year Initial
Interest Only Period- Single Family - Fannie Mae Uniform Instrument
Form 3153 2/06**
Ⓥ-197R (0603)
Page 1 of 4        Initials: _EMS_.
VMP Mortgage Solutions, Inc.

dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculationof Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and one-quarter** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.250** % or less than **2.250** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **11.250** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principaland Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Initials: _____

**-197R** (0603)                    Page 2 of 4                    **Form 3153 2/06**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

1769172144

**VMP®-197R** (0603)    Page 3 of 4    Initials: _Emb._    **Form 3153 2/06**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)  
-Borrower

*Elisa M. Gallardo* (Seal)  
Elisa M. Gallardo   -Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

VMP-197R (0603)                Page 4 of 4                Form 3153 2/06

DOC # 2015-0498440
11/12/2015 01:00 PM Fees: $31.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

Recording Requested By:
PeirsonPatterson, LLP
And When Recorded Mail To:
**PEIRSONPATTERSON, LLP**
**ATTN: RECORDING DEPT.**
**13750 OMEGA ROAD**
**DALLAS, TX 75244-4505**

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: TERESA #134

USBIC

————————[*Space Above This Line For Recording Data*]————————

Loan No.: ▉▉▉▉▉▉▉▉

# CALIFORNIA ASSIGNMENT OF DEED OF TRUST

For Value Received, **JPMorgan Chase Bank, National Association**, the undersigned holder of a Deed of Trust (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto **Bayview Loan Servicing, LLC**, (herein "Assignee"), whose address is **4425 Ponce de Leon Blvd., Coral Gables, FL 33146,** all beneficial interest under a certain Deed of Trust dated **June 18, 2007** and recorded on **June 27, 2007**, made and executed by **ELISA M. GALLARDO**, to **FIDELITY NATIONAL TITLE**, Trustee, upon the following described property situated in **RIVERSIDE** County, State of California:
Property Address: **968 ASHFORD CIR, CORONA, CA 92881**

**See exhibit "A" attached hereto and made a part hereof.**

such Deed of Trust having been given to secure payment of **Four Hundred Thousand and 00/100ths** (**$400,000.00**), which Deed of Trust is of record in Book, Volume, or Liber No. N/A, at Page N/A (or as No. 2007-0417963), in the Office of County Recorder of **RIVERSIDE** County, State of California.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust on
02/19/2015 .



Assignor:
**JPMorgan Chase Bank, National Association**

By: _____
        *Charlotte Russ*

Its: _____ **VICE PRESIDENT**

---

California Assignment of Deed of Trust
JPMorgan Chase Bank N.A. Project W3032

Page 1 of 2

L73108CA 01/12 Rev. 02/14





# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of Louisiana                      §
                                          §

Parish of Ouachita                   §

On this day, _02/19/2015_, before me _*Y. K. Wilson*_ *Notary Public*

appeared _*Charlotte Russ*_, to me personally known, who, being by me duly sworn did say that he/she is the **VICE PRESIDENT**, of **JPMorgan Chase Bank, National Association**, and that the seal affixed to said instrument is the seal of said entity and that the instrument was signed in behalf of the said entity by authority of its Board of Directors or Trustees and that _*Charlotte Russ*_ acknowledged the instrument to be the free act and deed of the said entity.

*Y. K. Wilson*
*Notary Public #064399*
*Ouachita Parish, LA*
*Lifetime Commission*

Notary Public

*Y. K. Wilson*

Printed Name

(Seal)

My Commission Expires: *Lifetime*

---

California Assignment of Deed of Trust
JPMorgan Chase Bank N.A. Project W3032       Page 2 of 2       L73108CA 01/12 Rev. 02/14



*1-209799*           *1769172144*

LEGAL DESCRIPTION

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF CORONA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Lot 50 of Tract No. 19690-2, as shown on a map recorded in Book 162, Pages 78 to 82, inclusive, of Maps, in the Office of the County Recorder of Riverside County.

Excepting therefrom all oil, mineral, gas, petroleum and other hydrocarbon substances below a depth of 500 feet, as set out in deeds to DSL Service Company, a California Corporation, recorded April 27, 1984 as Instrument Numbers 88230, 88231 and 88232 and May 17, 1984 as Instrument Number 104195 and May 31, 1984 as Instrument Number 115949, all of Official Records.

Assessor's Parcel No: 107-272-009

ClassC5384a (1538044) ClassC8-1 Filed 05/05/53 Ent/Sec04/02/05/05:05:05 15P pg c40
Main Document 54 Page 51 of 60

Recording Requested By:
PeirsonPatterson, LLP
And When Recorded Mail To:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505



—————————————[Space Above This Line For Recording Data]—————————————

| Loan No.: ██████████ |

# CALIFORNIA ASSIGNMENT OF DEED OF TRUST

For Value Received, **JPMorgan Chase Bank, National Association**, the undersigned holder of a Deed of Trust (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto **Bayview Loan Servicing, LLC**, (herein "Assignee"), whose address is **4425 Ponce de Leon Blvd., Coral Gables, FL 33146**, all beneficial interest under a certain Deed of Trust dated **June 18, 2007** and recorded on **June 27, 2007**, made and executed by **ELISA M. GALLARDO**, to **FIDELITY NATIONAL TITLE**, Trustee, upon the following described property situated in **RIVERSIDE** County, State of California:
Property Address: **968 ASHFORD CIR, CORONA, CA 92881**

**See exhibit "A" attached hereto and made a part hereof.**

such Deed of Trust having been given to secure payment of **Four Hundred Thousand and 00/100ths ($400,000.00)**, which Deed of Trust is of record in Book, Volume, or Liber No. **N/A**, at Page **N/A** (or as No. **2007-0417963**), in the Office of County Recorder of **RIVERSIDE** County, State of California.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust on
02/19/2015          .



Assignor:
**JPMorgan Chase Bank, National Association**

By: _____
*Charlotte Russ*

Its: _____**VICE PRESIDENT**_____





*1 - 209799*          *1769172144*

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of **Louisiana**                                   §
                                                         §
Parish of **Ouachita**                                   §

On this day, _02/19/2015_, before me _____ *Y. K. Wilson   Notary Public*
appeared _____*Charlotte Russ*_____, to me personally known, who, being by me duly
sworn did say that he/she is the _____**VICE PRESIDENT**_____, of **JPMorgan Chase Bank, National Association**, and that the seal affixed to said instrument is the seal of said entity and that the instrument was signed in behalf of the said entity by authority of its Board of Directors or Trustees and that _____*Charlotte Russ*_____ acknowledged the instrument to be the free act and deed of the said entity.

*Y. K. Wilson*
*Notary Public #064399*
*Ouachita Parish, LA*
*Lifetime Commission*

(Seal)

_____
Notary Public

*Y. K. Wilson*
_____
Printed Name

My Commission Expires: *Lifetime*

---

**California Assignment of Deed of Trust**
**JPMorgan Chase Bank N.A. Project W3032**                Page 2 of 2                L73108CA 01/12 Rev. 02/14



*1 - 2 0 9 7 9 9 *          * 1 7 6 9 1 7 2 1 4 4 *

LEGAL DESCRIPTION

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF CORONA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA; AND IS DESCRIBED AS FOLLOWS:

Lot 50 of Tract No. 19690-2, as shown on a map recorded in Book 162, Pages 78 to 82, inclusive, of Maps, in the Office of the County Recorder of Riverside County.

Excepting therefrom all oil, mineral, gas, petroleum and other hydrocarbon substances below a depth of 500 feet, as set out in deeds to DSL Service Company, a California Corporation, recorded April 27, 1984 as Instrument Numbers 88230, 88231 and 88232 and May 17, 1984 as Instrument Number 104195 and May 31, 1984 as Instrument Number 115949, all of Official Records.

Assessor's Parcel No: 107-272-009

| reqID: | 2794235 | **Trailing Document Header** | **Date** | 1/13/2017 |



## CL-ASSIGN-UNREC-SOLD

| Loan Number: | �as45 | **Borrower Name** | GALLARDO, ELISA |

**Borrower Address**   968  ASHFORD CIR CORONA, CA 92881

**Document SAK Number**

Cus_Doc_type

**Return To:**   **LEONARDO NUNEZ**

**Doc Description**   **Return to Requestor**



### 44796-0002794235-001087745

| **Image Tracking Batch:** | 44796 | **ITEM:** | 54 |
| **Doc Count** | 117 | *DEAL_ID:* | J-25395-12 |

**Comment**   300373

**Exception SAK Number**

**Vault Location**

**Customer Special UDFs**

**Issuer #** _____ **Pool #** _____

**Account #** _____ **Collateral Control #** _____

### 001087745



**RECORDING REQUESTED BY:**
RICHMOND MONROE GROUP, INC.

**WHEN RECORDED MAIL TO:**
JENNIFER BAINTER
RICHMOND MONROE GROUP, INC.
P.O. BOX 458
Kimberling City, MO, 65686



## CORPORATE ASSIGNMENT OF DEED OF TRUST

Loan #: ████ / TS Ref #: 00████
CA/RIVERSIDE

Assignment Prepared on: December 28, 2016

For Value Received, **BAYVIEW DISPOSITIONS IIIB, LLC**, whose address is 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL, 33146 **(herein "Assignor")** hereby grant, sell, assign, transfer and convey to **Wilmington Savings Fund Society, FSB, d/b/a Chrstiana Trust as Owner Trustee of the Reside███ redit Opportunities Trust III** , whose address is 2999 WESTMINISTER AVE, SUITE 265, SEAL BEACH, CA, 90740 **(herein "Assignee")** all interest under that certain Deed of Trust Dated: 6/18/2007, in the amount of $400,000.00, executed by ELISA M. GALLARDO, A SINGLE WOMAN to JPMORGAN CHASE BANK, N.A. and Recorded: 6/27/2007, Instrument #: 2007-0417963 in RIVERSIDE County, State of California and all rights accrued or to accrue under said Deed of Trust.

BAYVIEW DISPOSITIONS IIIB, LLC

On: *1-13-17*

Signature: _____

Name:  · LEONARDO NUNEZ

Title:    ASSISTANT VICE PRESIDENT

STATE OF __**Florida**__
COUNTY OF __**Miami-Dade**__

On *1-13-17* , before me, _____**Pamela Vargas**_____ , a Notary Public in and for **Miami  Dade** in the State of _____**FL**_____ , personally appeared LEONARDO NUNEZ, ASSISTANT VICE PRESIDENT, BAYVIEW DISPOSITIONS IIIB, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
**Pamela Vargas**
Notary Expires: _____ /#: _____

PAMELA VARGAS
MY COMMISSION # FF 068874
EXPIRES: November 6, 2017
Bonded Thru Notary Public Underwriters

Page: 2 of 2 / Loan #█████████ / TS Ref #:█████████████

**CA/RIVERSIDE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1920 Old Trustin Ave.
Santa Ana, CA 92705

A true and correct copy of the foregoing document entitled (*specify*): Proof of claim _____

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 07/10/2018_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov; Barry R Swan    bswan@rjslaw.com;
Barry L O'Connor    udlawBK@aol.com; Merdaud Jafarnia    bknotice@mccarthyholthus.com,
mjafarnia@ecf.inforuptcy.com; Sean C Ferry    sferry@ecf.courtdrive.com, bkyecf@rasflaw.com; Nancy K Curry (TR)
TrusteeECFMail@gmail.com; Elham Azimy    eazimy@a-lawfirm.com

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)    07/10/2018_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Jeu Victor Soria, Sr.
Elisa Gallardo
968 Ashford Circle
Corona, CA 92881

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/10/2018 | Maben May | /s/ Maben May |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1920 Old Tustin Ave.
Santa Ana, CA 92705

A true and correct copy of the foregoing document entitled (*specify*): _____

_____

OBJECTION TO AMENDED CHAPTER 13 PLAN _____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 08/01/2018_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

   Debtors Counsel: Cynthia Grande  ecf@thegrandelawfirm.com, cynthia.grande@gmail.com;
   r60020@notify.bestcase.com
   Trustee: Rod Danielson (TR) notice-efile@rodan13.com
   US Trustee:United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __08/01/2018_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

   Debtor: Jeu Victor Soria, Sr. 968 Ashford Circle Corona, CA 92881 (US Mail)
   Joint Debtor: Elisa Gallardo 968 Ashford Circle Corona, CA 92881 (US Mail)
   Judge: Honorable Wayne E. Johnson 3420 Twelfth Street, Suite 384 Riverside, CA 92501-3819 (US Mail)

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 08/01/2018 | Krystle Miller | /s/ Krystle Miller |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**